IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PATRICK HARRINGTON, )
)
Plaintiff, )
)
v. ) CASE NO. 3:10-CV-1048-WKW
) [WO]
CITY OF PHENIX CITY, )
RACHAEL HAUSER, )
KIRBY DOLLAR, TIM WATFORD, )
and THOMAS BOSWELL, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant Kirby Dollar's Motion to Dismiss Amended

Complaint (Doc. # 35) and Defendant Thomas Boswell's Motion to Dismiss (Doc. #

49).[1] Both motions are accompanied by supporting briefs. (Docs. # 36 & 50.)

Plaintiff Patrick Harrington filed responses in opposition to the motions (Docs. # 74

& 75), to which Defendants Dollar and Boswell replied (Docs. # 76 & 81). After

careful consideration of the arguments of counsel and the relevant law, the court finds

that Mr. Dollar's motion is due to be granted in part and denied in part and Mr.

Boswell's motion is due to be granted.

---

[1] No other defendants have filed motions to dismiss.

# I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, and 28 U.S.C. §§ 2201–02.  Personal jurisdiction and venue are not contested, and there are adequate allegations in support of both.

# II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 1950 (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (*Twombly* formally retired "the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard.").

Finally, in addition to considering the properly pleaded allegations of the complaint, on a motion to dismiss, the court can consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. BACKGROUND

On December 9, 2010, Mr. Harrington filed suit against the City of Phenix City, Phenix City police officer Rachael Hauser, Russell County sheriff's deputy Tim Watford, and Russell County sheriff's deputy Kirby Dollar. (Doc. # 1.) On April 19,

2011, Mr. Harrington filed an amended complaint that added Russell County sheriff Thomas Boswell as a defendant.[2]  (Doc. # 32.)  Mr. Harrington's claims, brought pursuant to 42 U.S.C. § 1983,  42 U.S.C. § 1985, and Alabama state law, arise out of an incident that occurred on November 26, 2010, in which Mr. Harrington was arrested and allegedly beaten by Deputies Dollar and Watford, with Officer Hauser standing by.  Mr. Harrington seeks a declaratory judgment, compensatory damages, punitive damages, and attorneys' fees on his claims against all Defendants.

## A.   <u>The November 26, 2010 Incident</u>

On November 26, 2010, Mr. Harrington was taken into custody in Lee County, Alabama, by three bail bondsmen on outstanding warrants.  One of the bondsmen called Deputy Dollar, who had previously asked to be contacted if Mr. Harrington was taken into custody.  Deputy Dollar had "ill will" toward Mr. Harrington.  (Doc. # 32 ¶ 28.)  Deputy Dollar was out drinking with friends when he received the bondsman's call.  Deputy Dollar, Deputy Watford, and Officer Hauser drove in an unmarked car[3]

---

[2]  Mr. Harrington's claims will be referred to as stated in his amended complaint (Doc. # 32):  Excessive Force (Count 1); Failure to Prevent Violation of Rights (Count 2); Conspiracy to Violate Civil Rights (Count 3); Assault and Battery (Count 4); Intentional Infliction of Emotional Distress (Count 5); Neglectfulness, Unskillfulness or Carelessness (Counts 6 and 7); Negligent Training/Supervision/Selection (Count 8); Deprivation of Civil Rights Under Color of State Law False Arrest; False Imprisonment (Count 9); False Arrest, False Imprisonment (Count 10); and Deliberate Indifference (Count 11).

[3]  The complaint does not identify the unmarked car as a police car, but references to blue flashing lights in the complaint and briefing lead to the conclusion that it was.

4

from Russell County, Alabama, to Lee County, Alabama, where the bondsmen had Mr. Harrington in custody.

When Deputies Dollar and Watford and Officer Hauser arrived, their car's blue lights were flashing. Deputy Dollar got out of the car and went over to Mr. Harrington, who was lying face down on the ground with his hands handcuffed behind his back. Deputy Dollar kicked Mr. Harrington in the head, exclaiming "Oops!" (Doc. # 32 ¶ 16.) Deputy Dollar asked if anyone had cameras, to which no one responded. Deputies Dollar and Watford turned Mr. Harrington over, and Deputy Watford said, "Remember me!" (Doc. # 32 ¶¶ 16–17.) The deputies began to beat Mr. Harrington and curse at him, calling him a "piece of s---" and a "mother------." (Doc. # 32 ¶¶ 16, 18.) Deputy Dollar repeatedly struck Mr. Harrington in the head, while Deputy Watford choked and hit him. Throughout the beating, Mr. Harrington repeatedly asked the deputies to stop hitting him, and he eventually lost consciousness. It is unclear how long the deputies continued to beat Mr. Harrington.

During the attack, Officer Hauser stood guard and would not let anyone help Mr. Harrington. The bondsmen wanted to stop the deputies, but they were afraid that Officer Hauser might use her weapon against them if they intervened.

At some point, a Lee County marked unit arrived. Deputy Dollar spoke with the officers in the car, and then the car left. Afterward, an ambulance and a Lee

County Sergeant arrived.  While they were arriving, Deputy Dollar asked if anyone had keys to the handcuffs so as to leave the impression that Mr. Harrington was not handcuffed.  The bondsmen told Deputy Dollar that they did not have the keys.  When the Lee County sergeant arrived, he would not let the bondsmen put a coat or blanket on Mr. Harrington, who had complained of being cold.  The Lee County sergeant did not do anything with regard to the deputies' attack on Mr. Harrington.

One of the bondsmen rode with Mr. Harrington in the ambulance to the hospital.  Another bondsman reported the incident to the Muscogee County Sheriff's Department in Columbus, Georgia.  As a result of the incident, Mr. Harrington suffered full body bruising, a burst ear drum in his left ear, potentially permanent loss of sight in his right eye, loss of use of his left leg, and severe tearing to his left knee and leg.  He also required stitches for deep lacerations on his body and face.  Deputies Dollar and Watford and Officer Hauser were suspended from their duties and have since resigned from their positions as law enforcement officers.

**B.**     **Sheriff Boswell's Statements to the Press**

Shortly after the November 26, 2010 incident, during an interview for a newspaper article,[4] Sheriff Boswell made statements regarding his philosophy on

---

[4] Chuck Williams, *Boswell Nears End of 37-Year Career in Law Enforcement*, Ledger-Enquirer, Jan. 2, 2011, at A1.

running the Russell County Sheriff's Department.  Sheriff Boswell stated, "My philosophy is you got to have a balance in your department . . . .  For years I have said it was a balance between the good old boys and the hunter/killers."  (Doc. # 32 ¶ 34.) Sheriff Boswell went on to describe this balance:

> "The good old boys are people who were raised here in Russell County [and] know everybody" and "sometimes have a hard time making cases on people because they are part of the community. . . .  The other group – the hunter/killers – usually are retired Army.  They move here or marry local girls.  They are knowledgeable in police skills.  And they will put anybody in jail – even their own mother."
>
>  . . .
>
> "You can't have a department of good old boys or you will never get anything done. . . .  And you can't have a department of entirely hunter/killers because you won't stay in office."

(Doc. # 32 ¶¶ 35–36 (citing Williams, *supra*, at A1).)[5]  Mr. Harrington further alleges that Deputies Dollar and Watford are both members of the armed forces and war veterans.

---

[5] These statements from a newspaper article are hearsay.  If offered for the truth of the statements – and apparently they are – they are not admissible and would not be considered as evidence.  That point was not raised in the briefing and, in any event, the evidentiary value of the statements is immaterial to the ruling on the motion to dismiss.

# IV.  DISCUSSION

## A.  **Preliminary Matters**

While Counts 1–11 of the amended complaint use the term "Defendants" as the subjects of each of the claims, Plaintiff has not disputed the representation of Sheriff Boswell that "Plaintiff's Counsel has confirmed that no claims are made against Sheriff Boswell in Counts 1–10 of the Amended Complaint."  (Doc. # 50, at 2 n.2.) Sheriff Boswell is, therefore, only named in Count 11, which is titled "Deliberate Indifference."

Deputy Dollar contends that Count 6 (Neglectfulness, Unskillfulness or Carelessness of an Officer) does not relate to him.  In Mr. Harrington's response, he argues that he has alleged facts indicating Deputy Dollar's "neglect, carelessness, or unskillfulness."  (Doc. # 74, at 19, 22.)  However, in the amended complaint, Mr. Harrington repeatedly states that Count 6 relates to "[t]he agent, employee, or officer of the City, named above as defendants in this suit."  (Doc. # 32, ¶¶ 82–84.)  Only Officer Hauser is an agent, employee or officer of the City.  Deputies Dollar and Watford are agents, employees or officers of the Sheriff of Russell County, Alabama, and, thus, are state officials.  *See Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) ("Under the plain language of the Constitution of Alabama, a sheriff is an executive officer of the state[,]" and thus, is "an employee[] of the State of

Alabama."); *Carr v. City of Florence*, 916 F.2d 1521, 1526 (11th Cir. 1990) ("The deputy sheriff is the alter ego of the sheriff . . . ."). To the extent that Count 6 is construed to include Deputy Dollar, it is due to be dismissed.

## B.   Official Capacity Claims Against Sheriff Boswell and Deputy Dollar for Monetary Relief

Mr. Harrington asserts claims against Sheriff Boswell and Deputy Dollar in both their individual and official capacities. "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Alabama sheriffs and deputy sheriffs are state officials and are entitled to immunity under the Eleventh Amendment. *Free,* 887 F.2d at 1557 (holding that an Alabama sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); *Carr*, 916 F.2d at 1527 (holding that "Alabama deputy sheriffs are immune from suit in their official capacities under the eleventh amendment to the United States Constitution"). Sheriff Boswell and Deputy Dollar are entitled to absolute immunity

from any claims for damages against them in their official capacities.[6]  Thus, all claims for monetary damages against Sheriff Boswell and Deputy Dollar in their official capacities are due to be dismissed.

## C.   **Declaratory Judgment**

Mr. Harrington seeks a "declaratory judgment that the policies and practices complained of herein are unlawful and violative of the Fourth Amendment to the United States Constitution . . . and the common and statutory law of Alabama[.]" (Doc. # 32, at 18.)  Mr. Harrington admits that "no specific equitable remedy is mentioned in the complaint," and clarifies that he is only seeking a declaratory judgment "so that [the] issue o[f] whether [Deputy] Dollar, in fact, violated [Mr. Harrington's] rights does not have to be submitted to the finder of fact."  (Doc. # 74, at 10; *see* Doc. # 32.)

In light of this admission, Mr. Harrington is seeking a declaratory judgment against Deputy Dollar for his alleged past violations of law.  Because Mr. Harrington's claims for declaratory relief are related solely to Deputy Dollar's alleged past violations of law, those claims against him in his official capacity are due to be dismissed.  *See Cobb v. Marshall*, 481 F. Supp. 2d 1248, 1258 (M.D. Ala. 2007)

---

[6]  Similarly, Sheriff Boswell and Deputy Dollar, in their official capacities, are not "persons" for purposes of § 1983 monetary relief.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).  Counts 1, 2, 9, and 11 include § 1983 claims against these Defendants.

(discussing Eleventh Amendment immunity and foreclosing the plaintiff's attempt to use *Ex parte Young* to "'adjudicate the legality of past conduct'" in the form of declaratory relief (citation omitted)).

**D.    Claims Against Deputy Dollar in His Individual Capacity**

Deputy Dollar argues that the following claims in the amended complaint are due to be dismissed against him:  Conspiracy to Violate Civil Rights under 42 U.S.C. § 1985 (Count 3); Assault and Battery under Alabama law (Count 4); Intentional Infliction of Emotional Distress under Alabama law (Count 5); False Arrest and False Imprisonment under 42 U.S.C. § 1983 (Count 9); and False Arrest and False Imprisonment under Alabama law (Count 10).  (Doc. # 36, at 1.)  Mr. Harrington's § 1985 conspiracy claim will be addressed first, followed by his § 1983 claim, and ending with his Alabama state law claims.

**1.    *Conspiracy Claim Under § 1985 (Count 3)***

Mr. Harrington alleges that Deputy Dollar, along with Deputy Watford and Officer Hauser, conspired to deprive Mr. Harrington of the right to be free from the use of excessive force, as enforced by § 1985(3).  (Doc. # 32 ¶ 69.)  "To state a claim for relief under § 1985(3), a plaintiff must establish that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  *Smith v. Belle*, 321 F. App'x 838, 845 (11th Cir. 2009)

(quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Mr. Harrington makes no allegations that Deputy Dollar, Deputy Watford, or Officer Hauser were motivated by racial or other class-based discriminatory intent, and, accordingly, the amended complaint fails to state a § 1985(3) claim.  *Smith*, 321 F. App'x at 845–46.  This claim is due to be dismissed.

### 2.    *False Arrest and False Imprisonment Claim Under § 1983 (Count 9)*

In Count 9, Mr. Harrington alleges a Fourth Amendment false arrest and false imprisonment claim under § 1983.  This § 1983 claim focuses upon the period after Mr. Harrington was taken into custody by the bondsmen and detained at the scene until the arrival of Deputies Dollar and Watford and Officer Hauser.[7]  (Doc. # 32 ¶¶ 98, 103–04.)  Mr. Harrington alleges that this "extended" roadside detention was for an improper purpose and was not supported by probable cause.  Thus, it amounts to a false arrest and false imprisonment, in violation of his Fourth Amendment right to be free from unreasonable seizures.[8]  (Doc. # 32 ¶¶ 98, 104; *see also* Doc. # 74, at

---

[7]  This episode is elsewhere referred to as an "arrest" in conformity with the parties' use of the term.  If there is an issue relating to detention by the bondsmen and the legal consequences thereof, it has not been raised and no position is expressed on the matter here.

[8]  It is helpful to point out what Mr. Harrington is not alleging in Count 9.  He is not alleging that his initial arrest was unlawful or not supported by probable cause.  (*See* Doc. # 32 ¶ 11 (admitting that he was arrested pursuant to outstanding warrants); Doc. # 74, at 18 (admitting that his arrest was "lawful").)  In this count, he is bringing a claim based only upon his detention following his lawful arrest, and is not alleging the invalidity of either the initial

18 (asserting that Deputy Dollar "played a major part in [his] continued detention"); Doc. # 74, at 6 (contending that Deputy Dollar "demanded . . . that [he] be held for an extended period of time, subdued, secured and handcuffed behind his back, on the ground until [Deputy Dollar] could arrive to viciously attack Plaintiff").)

Deputy Dollar argues that Mr. Harrington's claim "that he was detained by the roadside for an extended period of time does not state a claim under the Fourth Amendment" because there are no allegations that "plausibly demonstrate that [Mr. Harrington] would have been released from custody earlier but for the alleged wait." (Doc. # 17, at 16.)   He also contends that there are no facts "demonstrat[ing] a violation of clearly established law as to the false arrest/false imprisonment claim," thus, entitling him to qualified immunity.  (Doc. # 36, at 17.)

Deputy Dollar does not challenge Mr. Harrington's reliance on the Fourth Amendment's reasonable test for his claim challenging as unconstitutional his post-arrest, pre-booking detention.  Although the lines sometimes blur as to when an arrest and the concomitant protection of the Fourth Amendment end and the protection of the Fourteenth Amendment accorded to a pretrial detainee begins, absent objection or a different analysis offered, it will be assumed that the Fourth Amendment serves as the guide for analyzing Mr. Harrington's claims in Count 9.  *See generally Calhoun*

---

arrest or the arrest warrants.

13

*v. Thomas*, 360 F. Supp. 2d 1264, 1272–74 (M.D. Ala. 2005) (discussing controlling case law and applying the Fourth Amendment to a plaintiff who "had already been 'seized' and, for all intents and purposes, arrested at the time of the alleged abuses," but nevertheless, was not a pretrial detainee because he had not been officially arrested or booked).

Count 9 fails for several reasons.  First, to the extent that Mr. Harrington asserts that the sole purpose of Deputy Dollar's "demand that [he] be held for an extended period, on the ground and in custody" was to give Deputy Dollar and his fellow officers time to arrive on the scene and assault him (Doc. # 32 ¶ 98), Deputy Dollar's motivation, no matter how offensive, is not relevant to the Fourth Amendment inquiry. Under the Fourth Amendment, "the subjective motivations of the individual officers . . . ha[ve] no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment."  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985) ("[T]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest [or] false imprisonment . . ., regardless of whether the defendants had malicious motives for arresting the plaintiff.").

Second, Mr. Harrington cites no case law to support his contention that his roadside detention after his lawful arrest must be supported by independent probable

cause or that, on this record, the issue of whether the scope of his roadside detention was unreasonable is distinct from the inquiry of whether the force used during the detention was reasonable.  "The Fourth Amendment is concerned with ensuring that the scope of a given detention is reasonable under the totality of the circumstances." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004).  Applying the Fourth Amendment's totality approach and no authority to the contrary having been cited, the court declines to analyze each facet of the detention as a separate constitutional violation.  Instead, the relevant inquiry includes the circumstances surrounding the length of Mr. Harrington's roadside detention within a determination of whether the totality of Deputy Dollar's conduct constituted excessive force, in violation of the Fourth Amendment.

Accordingly, Count 9 will be considered as part of Mr. Harrington's Fourth Amendment excessive force claim (Count 1), and not as an independent claim.

### 3.    *State Law Claims (Counts 4, 5 and 10)*

Deputy Dollar argues that he is entitled to absolute immunity on all Alabama state law claims.[9]  (Doc. # 36, at 13.)  It is well settled that Alabama sheriffs and their

---

[9]  In Mr. Harrington's response, Mr. Harrington argues that Deputy Dollar is not entitled to qualified immunity on the state law claims.  (Doc. # 74, at 15.)  Qualified immunity applies to federal § 1983 claims asserted against government officials in their individual capacities, not to state law claims brought against the government officials.  *See Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010) ("In civil rights actions brought under § 1983, the doctrine of qualified immunity 'offers complete protection for government officials sued in their individual capacities

deputies enjoy absolute immunity from state-law claims for money damages based on actions taken within the scope of their employment, and such immunity is not limited only to claims of negligence. *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1431 (11th Cir. 1997); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996); *see* Ala. Const. art I, § 14. This immunity applies to claims against state officers in both their official and individual capacities. *Tinney*, 77 F.3d at 383 n.3; *see also Ex parte Davis*, 930 So. 2d 497, 500 (Ala. 2005) ("The wall of immunity erected by § 14 is nearly impregnable . . . and bars . . . claims against a state official or employee sued in his official capacity as an agent for the State, and [ ] claims against a state official or employee sued in his individual capacity." (internal quotation marks, footnotes, and citations omitted)).

So long as a sheriff or deputy sheriff acts within the scope of his or her employment, immunity exists with respect to state-law claims, even for willful or malicious actions. *See Ex parte Davis*, 930 So. 2d at 501 (dismissing an assault and battery claim against a deputy sheriff on the basis of absolute immunity, and discussing the limited circumstances in which a suit may be maintained against sheriffs and deputy sheriffs). Further, any job-related claim against a sheriff or his deputy for money damages is barred; the only permissible claims against sheriffs related to their official actions are for certain types of injunctive relief. *Id.*

---

if their conduct does not violate clearly established statutory or constitutional rights . . . .'" (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)).

While the court is unaware of a bright line test used by Alabama courts in determining whether a particular action is "within the line and scope" of a state employee's duties, one Alabama case looked to whether a deputy sheriff's actions "were undertaken for some personal motive to further some personal interest" in determining whether he was entitled to absolute immunity. *See Ex parte Davis*, 930 So. 2d at 499, 501; *see also Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 985 (Ala. 1999) (holding that the defendant had acted outside the scope of his employment when sexually harassing an employee, in part because the "alleged acts were aimed merely at satisfying his own lustful desires").

The amended complaint states that Deputies Dollar and Watford and Officer Hauser were all "acting within the line and scope of their authority and pursuant to the policy of the City and of the Sheriff respectively." (Doc. # 32 ¶ 14.) However, courts are not bound to accept legal conclusions as true. *Iqbal*, 129 S. Ct. at 1949. Mr. Harrington further alleges that Deputy Dollar had ill will toward Mr. Harrington. The facts alleged by Mr. Harrington support this allegation. Mr. Harrington alleges that Deputy Dollar "had previously asked the bondsmen to contact him if Harrington was brought in custody" (Doc. # 32 ¶ 12), that Deputy Dollar "had been drinking [and] 'celebrating the day'" when he received the bondsman's call (Doc. # 32 ¶ 28), and that Deputy Dollar after receiving the call "got into an unmarked car and drove outside

[his] jurisdiction" where Mr. Harrington was in custody (Doc. # 32 ¶ 13).  Deputy

Dollar then proceeded to beat Mr. Harrington.  As pled, these facts indicate that

Deputy Dollar's actions were not within the line and scope of his duties but instead

based on a personal motive, that is, ill will toward Mr. Harrington.  At this time,

Deputy Dollar is not entitled to absolute immunity on the state law claims, and the

motion to dismiss the state law claims (Counts 4, 5 and 10) against Deputy Dollar is

due to be denied.

## D.    Claims Against Sheriff Boswell

In Count 11 of the amended complaint, Mr. Harrington alleges that Sheriff

Boswell "established and maintained a policy to employ 'hunter/killers' as deputies

because these individuals would jail 'even their own mother.'"  (Doc. # 32 ¶ 116.)

Sheriff Boswell argues that Mr. Harrington's claim of deliberate indifference is due

to be dismissed on the basis of qualified immunity.  (Doc. # 50, at 4.)  Mr. Harrington

argues that Sheriff Boswell is not entitled to qualified immunity because he violated

Mr. Harrington's clearly established Fourth Amendment right to be free from

excessive force.  (Doc. # 74, at 14.)  Mr. Harrington alleges that Sheriff Boswell

"specifically hired and sought out deputies having the instincts of a 'hunter/killer' and

the propensity to use excessive violence."  (Doc. # 32 ¶ 38.)  Mr. Harrington further

alleges that Sheriff Boswell's policy of hiring "hunter/killers" resulted in the violation

18

of Mr. Harrington's Fourth Amendment right to be free from excessive force.  (Doc. # 32 ¶ 119.)

## 1.    General Principles of Qualified Immunity at the Motion to Dismiss Stage

"The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages" unless they have violated a clearly established constitutional right. *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (citation and internal quotation marks omitted).  Because qualified immunity, as the name suggests, provides actual immunity from suit, rather than simply a defense to liability, its applicability should be resolved "at the earliest possible stage in litigation."  *Id.* (internal quotation marks omitted).   Accordingly, it may be raised at the motion-to-dismiss stage, but "is typically addressed at the summary judgment stage of a case," and all a court at this stage is permitted to do is determine whether the complaint "allege[s] the violation of a clearly established constitutional right."  *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

A qualified immunity determination requires evaluation with a multi-part test. First, a defendant must establish that he or she was acting within his or her discretionary authority as a public employee when the conduct in question occurred.

*Townsend*, 601 F.3d at 1158.  Next, a plaintiff must demonstrate "'that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'"  *Id.* (internal quotation marks omitted).  Before *Pearson v. Callahan,* 555 U.S. 223 (2009), courts were required to conduct the constitutional inquiry in order, that is, to decide whether a right existed (and whether it was violated) before deciding whether it was clearly established.  Now, however, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  *Id.* (quoting *Pearson*, 555 U.S. at 236).

It is undisputed that Sheriff Boswell was acting within his discretionary authority during the events in question, so the burden shifts to Mr. Harrington to show that his clearly established constitutional rights were violated by Sheriff Boswell.

> ### 2.    *Whether Mr. Harrington States a Plausible Claim that Sheriff Boswell Violated His Fourth Amendment Right to Be Free from Excessive Force*

Absent personal participation in the conduct giving rise to the injury, supervisory liability exists only when there is a "causal connection between" unconstitutional conduct and the supervisory defendant's actions.  Such a connection may be shown when "a supervisor's custom or policy . . . result[s] in deliberate

indifference to constitutional rights."[10]  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).   Mr. Harrington alleges that Sheriff Boswell's policy of hiring hunter/killers resulted in deliberate indifference to Mr. Harrington's constitutional right to be free from excessive force.[11]  (Doc. # 32 ¶¶ 117–19.)

To establish a deliberate indifference in hiring claim, Mr. Harrington must show that Sheriff Boswell's decision to hire Deputies Dollar and Watford "reflected a conscious disregard for a high risk that [the Deputies] would use excessive force in violation of [Mr. Harrington's] federally protected right."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415–16 (1997); *see also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1313 (11th Cir. 2001) (holding that a plaintiff "must demonstrate that the municipal hiring decision reflects deliberate indifference to the

---

[10]  The causal connection may also be shown "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation" or "when facts support an inference that the supervisor directed the subordinates to act unlawfully." *Cottone*, 326 F.3d at 1360.  Mr. Harrington makes no allegations of Sheriff Boswell's liability under these two theories.

[11]  In Mr. Harrington's response, he argues that Sheriff Boswell is liable for the actions of Deputies Dollar and Watford and Officer Hauser under a theory of failure to train.  (Doc. # 75, at 10.)  However, Mr. Harrington's amended complaint makes no allegations to support a § 1983 supervisory claim for failure to train.  Mr. Harrington's amended complaint only addresses Sheriff Boswell's supervisory liability as a result of his "deliberate indifference in the hiring and implementation of policies to employ [hunter/killer] deputies."  (Doc. # 32 ¶ 120.)  To the extent that Mr. Harrington attempts to introduce new claims in a response brief, he may not do so.  *See* Fed.R.Civ.P. 15(a); *Seropian v. Wachovia Bank, N.A.*, No. 10-80397-CIV, 2010 WL 2949658, *4 n.5 (S.D. Fla. July 26, 2010) ("A response to a motion is not the place to assert new causes of action.  Rather, Plaintiffs may seek to amend their complaint pursuant to [Federal Rule of Civil Procedure] 15(a)."); *see also Lewis v. State Farm Fire and Cas. Co.*, No. CA 10-0718-KD-C, 2011 WL 1642313, at *6 n.9 (S.D. Ala. Apr. 13, 2011).

risk that a violation of a particular constitutional or statutory right will follow the decision"); *Morris v. Crawford Cnty.*, 299 F.3d 919, 922 (8th Cir. 2002).  Culpability depends on "a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.  The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong."  *Brown*, 520 U.S. at 412.  In testing this link between the hiring decision and Mr. Harrington's injury, the court must decide "whether a full review of [the deputies'] record[s] reveal that Sheriff [Boswell] should have concluded that [the deputies'] use of excessive force would be a plainly obvious consequence of the hiring decision."  *Id.* at 412–13.

The only particular facts that Mr. Harrington alleges regarding the deputies' backgrounds are that the men "are members of the armed force[s] and war veterans." (Doc. # 32 ¶ 35.)  Additionally, Mr. Harrington alleges that Sheriff Boswell described veterans as a part of his hunter/killer group.  Mr. Harrington has not shown how being a member of the armed forces and a war veteran makes Deputies Dollar and Watford "highly likely to inflict" excessive force on others.  Mr. Harrington does not allege any facts that would indicate that excessive force violations would be a "plainly obvious consequence" of hiring the deputies.  Thus, Mr. Harrington cannot establish a plausible claim against Sheriff Boswell for a violation of his Fourth Amendment

right to be free from excessive force, and Sheriff Boswell is entitled to qualified immunity.

### 3.   *Whether Sheriff Boswell Violated a Clearly Established Right*

Additionally, Mr. Harrington cannot show that Sheriff Boswell violated a clearly established right.  A constitutional violation is "clearly established" if "it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted*." Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1233 (11th Cir. 2010) (internal quotation marks omitted).  "A plaintiff need not show that the officer's conduct specifically has been held unlawful," but only that the officer would have "fair warning that [his] conduct was unconstitutional," on the basis of "sufficiently clear" law.  *Bates v. Harvey*, 518 F.3d 1233, 1247–48 (11th Cir. 2008) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Mr. Harrington has not presented, and the court is not aware of, any authority which would put Sheriff Boswell on notice that implementing a policy of hiring deputies who are war veterans, members of the armed forces, or individuals who would "put their own mother in jail" would violate another's Fourth Amendment right to be free from excessive force.  Because Mr. Harrington has not demonstrated that Sheriff Boswell violated a constitutional right or that this right was clearly established, Sheriff Boswell is entitled to qualified immunity.  *See Townsend*, 601 F.3d at 1158.

23

Thus, all claims against Sheriff Boswell are due to be dismissed on the basis of qualified immunity.

## V. CONCLUSION

1)  Sheriff Boswell's motion to dismiss (Doc. # 49) is GRANTED based upon Eleventh Amendment and qualified immunity;

2)  Deputy Dollar's motion to dismiss (Doc. # 35 ) is GRANTED in part and DENIED in part.

    (a)  The motion to dismiss is GRANTED as to:

        (i) monetary claims against Deputy Dollar in his official capacity (Counts 1, 2, 3, 4, 5, 9 and 10);

        (ii) declaratory judgment relief sought against Deputy Dollar in his official capacity  (Counts 1, 2, 3, 4, 5, 9 and 10);

        (iii)  the conspiracy claim under § 1985 (Count 3);

        (iv) the neglectfulness, unskillfulness or carelessness of an officer claim (Count 6), to the extent that it is construed to include Deputy Dollar; and

        (v)  the false arrest and false imprisonment claim under § 1983 (Count 9).

(B)   The motion to dismiss is DENIED as to the Alabama state law

claims against Deputy Dollar in his individual capacity (Counts 4, 5 and

10).

DONE this 24th day of January, 2012.

                                    _____/s/ W.  Keith Watkins_____
                                    CHIEF UNITED STATES DISTRICT JUDGE