IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PATRICK HARRINGTON,        )
                           )
        Plaintiff,         )
                           )
    v.                     )    CASE NO. 3:10-CV-1048-WKW
                           )              [WO]
CITY OF PHENIX CITY, *et al.*,  )
                           )
        Defendants.        )

## <u>MEMORANDUM OPINION AND ORDER</u>

As all parties agree, this is a police brutality case.  Plaintiff Patrick Harrington

brings suit alleging three law enforcement officers from two agencies used excessive

force or failed to prevent the use of excessive force against him.  Two of the three

individual defendants in this civil action, Kirby Dollar and Timothy Watford, were

also criminally convicted under 18 U.S.C. § 242 as a result of the incident.  (Doc. #

106 at 4; Doc. # 111 at 4.)  In addition to Plaintiff's 42 U.S.C. §§ 1983 and 1985(3)

claims against the individual defendants and the City of Phenix City, Plaintiff has also

asserted various state law claims.

Before the court are Defendant Rachel Hauser's ("Hauser") Motion for

Summary Judgment (Doc. # 105) and Defendant City of Phenix City's ("the City")

Motion for Summary Judgment (Doc. # 108).[1]  Supporting briefs and evidentiary submissions accompany both motions.  (Docs. # 106 & 109.)  Plaintiff responded in opposition to both motions and included evidentiary submissions.  (Docs. # 111 & # 114.)  Defendant Hauser replied to Plaintiff's response (Doc. # 117), while the City did not.  After careful consideration of the arguments of counsel, the applicable law, and the record, the court finds that Defendants' motions are due to be granted in part and denied in part.

## I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.  It enjoys jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  The parties do not contest personal jurisdiction or venue, and allegations sufficiently support both.  The court further addresses jurisdictional questions regarding Plaintiff's state law claims in Part IV.C. below.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the

---

[1] The two remaining Defendants, Timothy Watford and the Estate of Kirby Dollar, have not filed motions for summary judgment.

inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  The court should grant the motion if the pleadings, together with supporting materials in the record, show that the movant is entitled to judgment as a matter of law.  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*  If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Id.* at 324.

A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not preclude summary judgment.

*Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citing *Evers v.*

*Gen. Motors* Corp., 770 F.2d 984, 986 (11th Cir. 1985)).

## III.  BACKGROUND[2]

On November 26, 2010, three bail bondsmen[3] took Patrick Harrington into

custody in Lee County, Alabama.  (Doc. # 32 ¶ 11.)  There were warrants out for

Harrington's arrest, including for failure to appear in court in Russell County.  (Tr.

Trans. Williams at 9.)[4]  Plaintiff had previously evaded arrest by Defendant Kirby

Dollar ("Dollar"), a deputy with the Russell County Sheriff's Department, a fact that

frustrated Dollar.  (Tr. Trans. Dollar at 4–5.)  Dollar asked bail bondsman Joseph

Williams ("Williams") to contact him if Williams ever apprehended Plaintiff.  (Tr.

Trans. Dollar at 4–5.)

When Williams apprehended Plaintiff on November 26, he did as asked.  This

was the Saturday after Thanksgiving, and Dollar had been drinking at home starting

---

[2] "[F]acts, as accepted at the summary judgment stage of proceedings, may not be the actual facts of the case." *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (internal quotation marks and citation omitted).  Analysis begins with a summary of the facts as viewed in the light most favorable to the plaintiff. *Id.*

[3] The three bondsmen on scene were Joseph Williams, Tony Viggins, and Jeremy Black. Viggins and Black were associates of Williams.  Dante Greene, a security guard employed by Williams in another of his business ventures, was also on the scene.  (Tr. Trans. Williams at 15–16.)

[4] All parties attached transcripts from Watford's criminal trial in Case No. 3:11-cr-55-MEF as exhibits to their summary judgment briefs in this case.  The excerpts refer to the name of the person testifying.

at about noon.  (Tr. Trans. Dollar at 5.)  He continued to drink into the evening and hosted a number of guests at his home, including his colleague from the Russell County Sheriff's Department, Deputy Tim Watford ("Watford"), and Officer Hauser of the Phenix City Police Department.  (Tr. Trans. Dollar at 6–7.)  All three had been drinking for several hours when, sometime after 11:00 p.m., Dollar received the call from Williams; Dollar resolved to go "get a few licks in."  (Tr. Trans. Dollar at 7.)

Dollar, Watford, and Hauser piled into Dollar's unmarked law enforcement vehicle, a red Chevrolet Monte Carlo, and Dollar drove them from his home in Russell County to the garage parking lot in Lee County where Williams had Harrington in custody.  (Doc. # 32 ¶ 13; Tr. Trans. Williams at 32.)  Dollar activated the car's wig-wag blue lights as he pulled into the lot.  (Tr. Trans. Williams at 32.)  Dollar, Watford, and Hauser exited the car and greeted Williams and the others.  While Williams was acquainted with Dollar and Watford, he did not know Hauser, and the men introduced Williams to Hauser for the first time.  (Tr. Trans. Williams at 34; Tr. Trans. Hauser at 15–16.)  At this point, Williams and his associates were all aware Hauser was a law enforcement officer.

Meanwhile, Plaintiff – who the bondsmen Tased minutes earlier while apprehending him (Tr. Trans. Williams at 22) – was lying on the ground with his hands cuffed behind his back.  (Tr. Trans. Hauser at 15.)  Dollar and Watford

approached Plaintiff while Hauser went back toward the Monte Carlo and "propped [herself] up" on the car.  (Tr. Trans. Williams at 36.)  Dollar and Watford began to attack Harrington.[5]  (Doc. # 32 ¶ 16.)  Plaintiff did not and could not resist. Handcuffed the entire time, he begged Dollar and Watford to stop beating him.  (Tr. Trans. Williams at 41.)  Plaintiff eventually lost consciousness as a result of the beating.  (Doc. # 32 ¶ 20.)  During the attack, Hauser stood fifteen to twenty feet away, neither intervening to stop the assault nor actively participating in it.  (Tr. Trans. Hauser at 16, 28–29; Tr. Trans. Watford at 11; Aff. of Harrington at 75.)

The attack only stopped when a marked Lee County Sheriff's Department unit arrived.  (Tr. Trans. Williams at 41.)  After briefly speaking with the Lee County deputies, Dollar, Watford, and Hauser got back into the Monte Carlo, and Dollar drove them back to his house.  Later, a Lee County ambulance arrived and transported Plaintiff to the hospital.  (Doc. # 32 ¶ 25.)  As a result of the incident, Plaintiff suffered full body bruising, a burst ear drum in his left ear, potentially permanent loss of sight in his right eye, loss of use of his left leg, and severe tearing to his left knee and leg.  He also required stitches for deep lacerations on his body and face.  (Doc. # 32 ¶ 27.)

---

[5] While there is some dispute as to whether Dollar and Watford also kicked and choked Plaintiff, there is no dispute that they both participated in the assault and that they punched Plaintiff almost continuously for a number of minutes.  (Tr. Trans. Hauser at 50; Tr. Trans. Williams at 41.)

Dollar, Watford, and Hauser were suspended from their duties as law enforcement officers and later resigned.  (Doc. # 32 ¶ 32.)  Deputies Dollar and Watford were sentenced to prison for federal criminal convictions arising from the incident. (Doc. # 106 at 4.)  Dollar died before he was to surrender to serve his prison sentence.  (Doc. # 97.) Officer Hauser was not charged criminally.  (Tr. Trans. Hauser at 47.)

## IV.  DISCUSSION

Plaintiff has raised federal claims under Sections 1983 and 1985 as well as a number of claims under state law against Hauser and the City.  Part A resolves preliminary matters pertaining to the federal claims.  Part B discusses the Section 1983 claims.  Part C concludes with a discussion of the state law claims.

### A.     Preliminary Matters

### 1.     Plaintiff's claim under 42 U.S.C. § 1985(3) fails because there is no allegation of qualifying discriminatory animus.

The elements of a cause of action under Section 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local v.*

7

*Scott*, 463 U.S. 825, 828–29 (1983).

Both the Supreme Court of the United States and the Eleventh Circuit Court of Appeals have interpreted the second element to require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971); *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 628 (1992). The Eleventh Circuit later joined the majority of Courts of Appeals to hold that gender-based conspiracies are among the types of class-based animus prohibited by Section 1985(3). *Lyes v. City of Riviera Beach*, 126 F.3d 1380, 1391 (11th Cir. 1997). Plaintiff alleges no comparable class-based animus.

Plaintiff argues Defendants harbored animus against him because he was a fugitive. Unlike race and sex, however, being a fugitive is not "an immutable characteristic determined solely by the accident of birth." *Id.* at 1390 (quoting *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973)). Animus against fugitives as a class therefore seems unlikely to be animus of the sort contemplated by the drafters of Section 1985(3). Moreover, the record evidence indicates that whatever animus existed in this case was against Harrington personally – as one who had evaded arrest by the law enforcement officers involved – not against fugitives or arrestees as a class. (Tr. Trans. Dollar at 5; Tr. Trans. Hauser at 11–12; Tr. Trans. Watford at 8.) Because Plaintiff alleges no qualifying class-based animus, he fails to satisfy the second

8

element of a Section 1985(3) claim, and Defendants are entitled to summary judgment on that claim.

**2.    Claims against Hauser in her official capacity are actually claims against the City.**

Plaintiff has sued Defendant Hauser, who was at the relevant time a Phenix City police officer, in both her official and individual capacities.  Plaintiff's claims against Hauser in her official capacity are actually claims against the City and therefore are due to be dismissed to avoid redundancy, as Plaintiff has brought the same claims against the City.  Individual defendants sued in their official capacities stand in the stead of the governmental entity they represent.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[S]uits against municipal officers are . . ., in actuality, suits directly against the city that the officer represents.").

Plaintiff argues that his official capacity claims against Hauser[6] are not "functionally equivalent" to his claims brought against the City.  (Doc. # 111 at 7–8.) Saying it does not make it so.  The claims are functionally equivalent because the same analysis – whether Hauser was acting under color of state law and pursuant to an official City policy or custom – applies to claims against her in her official capacity

---

[6] In the relevant counts of the complaint, Plaintiff refers only to "Defendants, or each or all of them" (Doc. # 32 ¶¶ 50, 59), without differentiating among claims brought against Hauser in her official or individual capacities or those claims brought against the City.

and against the City.  Disposing of the official capacity claims against Hauser only rids the docket of a redundant claim.  It does not change the substance of what remains before the court.

**B**.  **Remaining Section 1983 Claims**

To establish § 1983 individual liability, a plaintiff must demonstrate that (1) a defendant deprived the plaintiff of a right secured by the United States Constitution, and (2) a defendant committed the act or omission causing the deprivation while acting under color of state law.  *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).  A plaintiff who also claims official liability or municipal liability – concepts which are one and the same, as shown above – cannot simply allege a theory of respondeat superior to support that claim.  *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 663 (1978).  To establish official liability or the liability of a municipality, a plaintiff must show both that a defendant deprived him of a constitutional right while acting under color of state law and that the deprivation occurred pursuant to governmental "custom" or "policy."  *Griffin v. City of Opa-locka*, 261 F.3d 1295, 1307 (11th Cir. 2001) (citing *Floyd v. Waters*, 133 F.3d 786, 793 (11th Cir. 1998)).

Hauser and the City moved for summary judgment and produced evidence indicating Rachel Hauser did not act under state law.  Because Plaintiff failed to respond with evidence that Rachel Hauser was acting under state law, his Section

1983 claims against her and the City are due to fail.  *See Waddell*, 276 F.3d at1279 (articulating the burden of the nonmoving party where the movant provides evidence in support of summary judgment).

### 1.    **"Under color of law" requirement is a question of law on this record**.

Courts in the Eleventh Circuit and elsewhere have exhibited some ambivalence about whether action under color of law is a question of law or one of fact.  For reasons set forth below, it appears that at least in this case, it is a question of law.

The Eleventh Circuit has held that the concept of acting under color of state law is coterminous with the state action doctrine.  *Almand*, 103 F.3d at 1513 n.7.  The Supreme Court agrees that the two are identical in the case of a Section 1983 action brought against a state official.[7]  *Lugar*, 457 U.S. at 929.  Both courts sound in accord that state action is a question of law.  *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 997–98 (1982) (describing the question whether there is state action as one of law); *Cuyler v. Sullivan*, 446 U.S. 335, 342 n.6 (1980) (holding the same); *Almand*, 103 F.3d 1514 (holding the same).  This all indicates that the question of whether a defendant acts under state law is one of law.

At least one other Eleventh Circuit panel, however, suggested the question was

---

[7] The Supreme Court left room for the theoretical possibility that conduct could constitute action under color of state law but not state action in the case of a private person applying a state statute. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n.18 (1982) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 n. 23 (1970) as an example).

one of fact when it upheld a jury verdict based on "evidence from which a reasonable jury could conclude" that the defendant's tortious and criminal conduct occurred while he was acting under color of state law. *Griffin*, 261 F.3d at 1303.  Additionally, district courts within the Eleventh Circuit have held that it is a question of fact, as have other circuits. *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 48 (1st Cir. 1999) (finding genuine disputes of fact precluding summary judgment on question of whether police officer acted under color of law); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995) (describing state action inquiry as a question of fact); *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1309 (S.D. Ala. 2001); *Chancey v. Sw. Fla. Water Mgmt. Dist.*, No. 95-2027-CIV-T-17C, 1997 WL 158312, at *10 (M.D. Fla. Mar. 17, 1997).

There are instances where it is possible to determine "whether a person acted under color of state law as a matter of law" and others where "unanswered questions of fact regarding the proper characterization of the actions" are left for the jury to decide. *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980) (internal quotation marks and citations omitted).  The determination "inevitably requires . . . line drawing." *Griffin*, 261 F.3d at 1303.  "It is only through a process of 'sifting facts and weighing circumstances' that we arrive at a correct determination."  *Id.* (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  Here, there are no unanswered questions

of fact regarding the characterization of Rachel Hauser's actions; Plaintiff simply failed to produce evidence supporting his position.

### 2.   Where an officer purports to exercise official authority, she acts under color of law.

A defendant in a Section 1983 suit acts under color of state law where she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Akins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citations omitted); *Almand*, 103 F.3d at 1515 (quoting *West*). The dispositive question is whether the official acted pursuant to power derived from state authority or acted merely as a private individual. *Almand*, 103 F.3d at 1513. Misuse of power "made possible only because the wrongdoer is clothed with the authority of state law" constitutes action under color of law.[8] *United States v. Classic*, 313 U.S. 299, 326 (1941).

Defendants argue fervently that Rachel Hauser was not acting under color of law because she was off-duty, intoxicated, and out of her jurisdiction. (Doc. # 106 at 11–14.) "[T]he mere fact that an officer is off duty and out of uniform does not resolve the color-of-state-law issue." *Ott*, 169 F. Supp. 2d at 1307; *see also Almand*,

---

[8] *Classic* was a case applying the "under color of law" requirement contained in the statutory precursor to 18 U.S.C. § 242. 313 U.S. at 326. The phrase "under color of law" has the same meaning in both a criminal action under 18 U.S.C. § 242 and a civil action under 42 U.S.C. § 1983. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1268 n.8 (11th Cir. 2012).

103 F.3d at 1514–15 (analyzing color of law question carefully even though officer was off-duty and out of uniform).  Nor does the propriety of an officer's conduct determine whether she acted under color of state law; "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."  *Screws v. United States*, 325 U.S. 91, 111 (1945).  Thus, it is less important whether Hauser had any *actual* authority when she was in Lee County, outside of Phenix City where she had jurisdiction, and more important whether she *purported to have* authority or acted with the pretense of authority while there.

The Eleventh Circuit took the "purported authority" approach in two recent cases.  In *Almand*, an off-duty, out of uniform police office did not act under color of state law when, after the plaintiff asked him to leave her apartment, he forced his way back in and raped her.  103 F.3d at 1515.  Though she initially let him in because he was a police officer and purported to have information about those responsible for her daughter's rape a month earlier, "he was no different from any other ruffian" when he "forced open the closed door with such shock that wood broke off the door."  *Id.* at 1512, 1515.  He purported to use his authority for his initial entry – though he was off-duty – but not the second one, and thus he was acting as a mere private citizen when he forced his way back in.  *Id.* at 1515.

14

In *Butler*, a corrections officer came home from work to find a naked young man in her nineteen-year-old daughter's closet. 685 F.3d at 1263. Though she pulled her service weapon on the man, handcuffed, and detained him, "she was not purporting to exercise her official authority to subdue a criminal for purposes of an arrest." *Id.* at 1267. Neither the handcuffs nor the weapon – themselves indicia of authority – amounted to a purported exercise of her official authority. Firearm possession is, under most circumstances, lawful, and nothing restricts the use of handcuffs to law enforcement officers. *Id.* When she called her boss for advice about whether the young man could be charged criminally for his presence there, "she did no more than an ordinary citizen could do by simply requesting information from law enforcement authorities." *Id.*

By contrast, the Eleventh Circuit has cited approvingly the Fifth Circuit's opinion in *United States v. Tarpley*, 945 F.2d 806 (5th Cir. 1991). *See Butler*, 685 F.3d at 166–68 (analyzing *Tarpley* and contrasting it with *Butler*). In *Tarpley*, there was sufficient evidence for a jury to find that a police officer acted under color of law[9] when he assaulted his wife's lover, placed his service pistol in the man's mouth, and threatened to kill him. 945 F.2d at 808. During the assault, the officer told the victim,

_____

[9] *Tarpley* was a 18 U.S.C. § 242 case, *id.* at 806, but as stated above, the phrase "under color of law" has the same meaning in both a criminal action under 18 U.S.C. § 242 and a civil action under 42 U.S.C. § 1983. *Supra,* note 6.

"he was a sergeant on the police department, that he would and should kill [the victim], and that he could get away with it because he was a cop." *Id.* The officer and two of his colleagues then followed the victim in two squad cars to the edge of town. *Id.* These were not the actions of "a jealous husband," but of a man purporting to act under official authority. *Id.* at 809. Though the officer lacked official authority for his conduct, he nonetheless "claimed to have special authority for his actions by virtue of his official status," and his conduct therefore fell outside the ambit of his personal pursuits. *Id.*

Even superficially different standards lead to substantively equivalent analysis. After an off-duty, out of uniform police officer intervened in a street fight following Mardi Gras revelery – ultimately pistol whipping one man and fatally shooting another – our sister district looked to several factors to establish whether the officer acted under color of law. *Ott*, 169 F. Supp. 2d at 1307, 1309 (concluding that a genuine issue of material fact remained regarding whether the officer acted under color of state law). Relying on cases from other circuits, the court considered whether the officer attempted or initiated an arrest, flashed his badge, displayed or used a department-issued weapon, or orally identified himself as a police officer. *See id.* (collecting cases). These factors all bear on the essential question: whether the officer purported to exercise official authority. *Id.* at 1307.

16

### 3.      Rachel Hauser did not act under color of law.

Under the undisputed facts of this case, Rachel Hauser[10] exercised no authority, purported or actual.  Unlike the officer in *Tarpley*, she never "claimed to have special authority for" her action – or omission, as the case may be – "by virtue of [her] official status."  *Tarpley*, 945 F.2d at 809.  Not only did Plaintiff never purport to invoke authority, she did not purport to act at all.  She stood fifteen to twenty feet away during the duration of the assault.  (Tr. Trans. Hauser at 16; Tr. Trans. Watford at 11.)  She never struck Plaintiff.  (Tr. Trans. Hauser 28–29; Aff. of Harrington at 75.)  Inaction, rather than action, marks her presence at the scene.

Plaintiff's complaint contains a bare allegation that Rachel Hauser "stood guard and would not let anyone help Harrington."  (Doc. # 32 ¶ 21.)  There is no evidence in the record, however, from which a reasonable juror could find that Rachel Hauser actually prevented the bondsmen from interceding on Harrington's behalf; Plaintiff points to no evidence "creating unanswered questions of fact regarding the proper characterizations of" Hauser's actions.  *See Layne*, 627 F.2d at 13.  Rachel Hauser did not attempt an arrest, flash a badge, or display or use a weapon.[11]  (Tr. Trans. Hauser

---

[10] The only question before the court is whether Rachel Hauser's actions – not those of Kirby Dollar or Tim Watford – were under color of law.  Only Hauser and her employer have moved for summary judgment.

[11] Hauser was unarmed (Tr. Trans. Hauser at 28), but the bondsmen did not know that at the time.

at 44; Tr. Trans. Williams at 43.)  Though she had a mobile phone, she did not call dispatch or ask for back-up.[12]  (Tr. Trans. Hauser at 44.)  She did not place herself between the assault and the bondsmen on the scene to prevent them from interfering. (Tr. Trans. Black at 11; Tr. Trans. Watford at 11; Tr. Trans. Williams at 36.)  Nothing on this record indicates that Hauser was acting under color of law when she failed to intervene.[13]

Plaintiff does offer specific evidence that Williams did not intervene to stop the attack[14] because he "[did not] know if Police Officer Hauser had her gun with her." (Tr. Trans. Williams at 42.)   The subjective impressions of Plaintiff or of the bondsmen, however, have only limited relevance for determining whether Hauser acted under color of law; "the primary focus of the color of law analysis must be on the conduct of the police officer."  *Ott*, 169 F. Supp. 2d at 1309 n.6 (internal quotation marks and citations omitted).

Plaintiff has not argued that Williams and the others did not intervene because

---

[12] She also did not call for assistance preventing the assault, which she conceivably could have done as a private citizen.

[13] While it is true that an officer may be held liable under Section 1983 for failing to intervene when a constitutional violation takes place in her presence, *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998), the officer must still be acting under color of law when she fails to intervene.  That is, she must still purport to exercise official authority.

[14] Unlike Dollar, Watford, and Hauser, Williams was carrying a firearm.  (Tr. Trans. Williams at 42.)

of an assertion of authority on the part of Defendant Hauser.  In fact, undisputed record evidence indicates the contrary – that the bondsmen believed Hauser posed no obstacle because "she was so drunk she [probably] couldn't shoot straight."  (Tr. Trans. Williams at 96.)  Rather than purporting to assert any official authority, Hauser was "just standing around, trying to stay upright."  (Tr. Trans. Williams at 96.)  Moreover, the bondsmen's mere knowledge that Hauser was a law enforcement officer, without any action or assertion of authority on her part, cannot be enough to establish action under state law.  *See Almand*, 103 F.3d at 1514–15 (holding that officer's action in breaking into plaintiff's home and raping her was not under state law though plaintiff was subjectively aware that he was an officer).

Make no mistake:  There was nothing honorable about Hauser's action or inaction that night.  The undisputed evidence shows that she did not even attempt to help a defenseless, handcuffed detainee as he was savagely beaten by two intoxicated men.  By her own testimony, the beating went on for several minutes before she told the men to stop.[15]  However reprehensible her action or inaction, though, it was not

---

[15]  A factual dispute with no bearing on the outcome of the case will not defeat a motion for summary judgment.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (per curiam).  While there is a dispute as to whether she told the men to stop the assault spontaneously or because she saw the Lee County Sheriff's car arriving on scene, this is immaterial to the question of whether she acted under color of state law.  (*Compare* Tr. Trans. Hauser at 20–21 and Tr. Trans. Watford at 18 *with* Tr. Trans. Black at 11 and Tr. Trans. Williams at 41.)  There is no indication she invoked any official authority when she told them to stop, and even if she had, telling her compatriots to stop the assault did not amount to a

under color of law.  "Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights." *Almand*, 103 F.3d 1512.  Plaintiffs in federal court may not use Section 1983 to supplant state tort law.  *Baker v. McCollan*, 443 U.S. 137, 146–47 (1979).  Without action under state law, Plaintiff's Section 1983 claim against Rachel Hauser must fail.

### 4.       Municipal liability will not stand against the City because Defendant Hauser was not acting under state law.

To impose liability on a governmental entity under Section 1983, a plaintiff must establish that an employee or official acted under color of law.  *Monell,* 436 U.S. at 692.  Because, as shown above, Plaintiff has not raised a genuine issue of material fact as to whether Rachel Hauser acted under color of law, his claims against the City also fail as a matter of law.

Even if the court were to assume that Rachel Hauser was acting under color of law, Plaintiff's claim for municipal liability nonetheless would be due to fail because Plaintiff has not shown that Hauser undertook her actions or inactions pursuant to the City's "policy" or "custom."  The custom or policy requirement distinguishes "acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually

---

deprivation of Plaintiff's constitutional rights.

responsible." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 479 (1986) (emphasis in original).  Section 1983 does not support vicarious or respondeat superior liability, which rest "solely on the basis of the existence of an employer-employee relationship." *Monell*, 436 U.S. at 692.  Plaintiff has offered no evidence that Rachel Hauser's conduct that night came pursuant to the City's official policy or custom, and his claim against the City therefore fails as a matter of law.

### 5.  Plaintiff's Section 1983 claim for false arrest fails as a matter of law.

Plaintiff's claim under Count IX rests on the time period following his lawful arrest; he alleges that the "extended" roadside detention was for an improper purpose and lacked supporting probable cause.  (Doc. # 32 ¶¶ 92, 104.)  While he admits that his initial arrest was lawful and supported by probable cause (Doc. # 32 ¶ 11; Doc. # 74 at 18), he asks the court to conclude that independent probable cause was necessary to support his "extended" detention.  (Doc. # 32 ¶¶ 101–104.)

The court assumes, without deciding, that Count IX presents an actionable, independent claim.[16]  Even if it does, the claim fails against Hauser and the City for the reasons set forth above because there was no action under state law on the part of

---

[16] Plaintiff offers no support for his position that the period of detention while the bondsmen waited for Defendants' arrival should be treated as a separate or "extended" instance requiring independent probable cause.  Meanwhile, the existence of probable cause stands as an absolute bar to a subsequent Section 1983 cause of action for false arrest.  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

Hauser.

**C.**   **Plaintiff's State Law Claims**

In addition to his federal causes of action, Plaintiff also raises claims under state law.  Against both Hauser and the City,[17] he brings a claim for intentional infliction of emotional distress.  (Doc. # 32, Count V.)  Against Hauser,[18] he brings state law claims for assault and battery (Doc. # 32, Count IV), "neglectfulness" (Doc. # 32, Count VI), and false imprisonment (Doc. # 32, Count X).  Finally, he brings state law claims against the City for neglectfulness under Ala. Code § 11-47-190 (Doc. # 32, Count VII) and negligent training and supervision under Ala. Code § 6-11-27 (Doc. # 32, Count VIII).  Defendants Hauser and the City moved for summary judgment on the complaint as a whole, not individual counts.  (Docs. # 105 & 108.)

Because Plaintiff's Section 1983 claims against Dollar and Watford remain, claims over which the court has jurisdiction remain.  The court nonetheless declines to exercise jurisdiction over said claims based on the remaining federal claims against Defendants Dollar and Watford.

---

[17] Like his Section 1983 claims, Plaintiff did not actually distinguish among Defendants in Count V.  He alleged only, "Defendants, and each and all of them, either intended to inflict emotional distress on the Plaintiff, or they should have known that emotional distress was the likely result of their conduct."  (Doc. # 32 ¶ 77.)  Accordingly, the court construes this as a claim against Hauser and the City, as well as against Dollar and Watford.

[18] Counts IV, VI, and X were also against Defendants Dollar and Watford, but only Hauser has moved for summary judgment.

22

"[I]n any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims" over which the court has original jurisdiction "that they form part of the same case or controversy."   28 U.S.C. § 1367(a).   Notwithstanding supplemental jurisdiction, a district court has the discretion to decline supplemental jurisdiction if

> "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(d).

The court finds that this case presents exceptional circumstances compelling the court to decline supplemental jurisdiction over Plaintiff's state law claims against Hauser and the City.  *See* 28 U.S.C. § 1367(d).   Though Plaintiff's federal claims against Dollar and Watford remain, the future of those claims in federal court is exceedingly uncertain.[19]   Declining to exercise supplemental jurisdiction over Plaintiff's state law claims will not make this litigation more piecemeal than it already

---

[19] Plaintiff has indicated that he will dismiss his claims against Dollar.  (Doc. # 135.) Additionally, the litigation as it pertains to Watford is stayed indefinitely pending resolution of his bankruptcy proceedings.  (Doc. # 116.)

23

is.[20]  Plaintiff may also raise a novel issue of state law in Count VI, where he brings a claim against Hauser that tracks Ala. Code § 11-47-190, a statutory provision which, by its terms, applies only to a municipality.   A district court's exercise of supplemental jurisdiction is discretionary, and in circumstances like this, reasoned judgment cautions against the exercise of jurisdiction.  *See Williams v. Bennett*, 689 F.2d 1370, 1379–80 (11th Cir. 1982) (affirming a district court's decision not to exercise pendent jurisdiction over state law claims against one defendant where plaintiff alleged no federal claims against that defendant, only Section 1983 claims against other defendants).

Accordingly, Plaintiff's state law claims against Defendants Hauser and the City are due to be dismissed.  This dismissal will not work to Plaintiff's disadvantage; if he elects to bring suit in state court, operation of 28 U.S.C. § 1367(d) tolls the statute of limitations for his claims during the pendency of this action.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motion for Summary Judgment (Docs. # 105 & 108) is GRANTED in part and DENIED in part as follows:

---

[20] Upon cause shown by Defendants Hauser and the City as well as Plaintff (Docs. # 119, 120, & 121), the court has already denied a motion to stay the litigation as it pertains to Hauser and the City pending the resolution of Watford's bankruptcy.  (Doc. # 123.)

1.  Summary judgment is GRANTED on (1) Plaintiff's Section 1983 claims against Rachel Hauser and the City of Phenix City (Counts I and II and Count IX, as incorporated into Count I) and (2) Plaintiff's Section 1985(3) claim against Rachel Hauser and the City of Phenix City (Count IX).

2.  Summary judgment is DENIED with respect to Plaintiff's state law claims against Rachel Hauser and the City of Phenix City (Counts IV–VIII and X).

It is further ORDERED that Plaintiff's state law claims are DISMISSED without prejudice.  Plaintiff has leave to re-file the claims in state court.

It is further ORDERED that Rachel Hauser and the City of Phenix City are DISMISSED as parties to this action.

DONE this 24th day of October, 2012.

                    /s/ W. Keith Watkins                    
CHIEF UNITED STATES DISTRICT JUDGE